UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BERG, | Case No. 1:14-cv-01112-DAD-EPG-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S COMPLAINT** |
| vs. | |
| I. GUERRA, *et al.*, | OBJECTIONS DUE WITHIN THIRTY (30) DAYS |
| Defendants. | (ECF No. 10) |

Jason Berg ("Plaintiff") is a state prisoner proceeding *pro se* with this civil rights action under 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on July 16, 2014. (ECF No. 1.) On September 28, 2015, the Court screened Plaintiff's Complaint and found that he had stated a single claim for violation of due process. (ECF No. 10.) In the screening order, Plaintiff was provided the option of proceeding on his due process claim or filing an amended complaint to address the deficiencies in the Complaint. Plaintiff elected to file an amended complaint (the "FAC"). (ECF No. 12.) The FAC is now before the Court for screening.

**I.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

1

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.  While factual allegations are accepted as true, legal conclusions are not. *Id.*

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. *Id.* at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.*

**II.   SUMMARY OF FIRST AMENDED COMPLAINT**

Plaintiff is currently incarcerated at Kern Valley State Prison in Delano, California in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  The events at issue in the Complaint allegedly occurred at the California Correctional Institution ("CCI") in Tehachapi, California when Plaintiff was incarcerated there.  Plaintiff names as defendants I. Guerra (RN), A. Salzman (RN), Dr. Michael Vuong Vu, J. Schneider, Kim

2

Holland (Warden, CCI), and a Doe Defendant (RN) ("Defendants").  All of the Defendants were employed by the CDCR at CCI at the time of the events at issue.

On or about June 21, 2012, Plaintiff was treated at U.C. Davis.  He told the medical staff he believed he had been poisoned.  Plaintiff began to think the medical staff was holding back information about his medical condition; one nurse would start to cry when she looked at him.  He asked everyone there what was wrong with him and they claimed they did not know.  On at least two occasions, after he had tests taken, he heard the nurses asking the medical staff, "Did they tell him, did they tell him?" and the response was "no."  (FAC at 4, ECF No. 12.)  They gave him an injection of water to "flush [his] system," which Plaintiff alleges was to "shut [him] up."  *Id*.  He later requested that U.C. Davis send him his medical records, but they sent the records to CCI.  The records do not reflect Plaintiff's statements to medical personnel that he believed he had been poisoned.

On or about June 28, 2012, Plaintiff met with Dr. Bobbala (who is not named as a defendant).  Dr. Bobbala told Plaintiff that he had tested positive for emphysema at U.C. Davis.  Plaintiff's blood was drawn for testing, but now the results and all records of the blood test are "missing."  *Id*. at 5.  On November 14, 2012, Dr. Bobbala ordered an EKG for Plaintiff.  On November 24, 2012, an unknown R.N. gave Plaintiff an EKG and told him that the nerves in part of his heart are "dead or not working."  *Id*.

On or about August 20, 2013, Defendant Vu ordered Oxcarbazepine for Plaintiff, despite the fact that Plaintiff had told Vu that he did not want to take any medications to treat psychological conditions.  Plaintiff complained of pain and Vu suggested a pain medication that is also indicated for the treatment of psychological conditions, but Plaintiff refused.  Vu then proceeded to suggest three different medications that doubled as pain and psychiatric medications and Plaintiff refused each time.  Vu informed Plaintiff that he would find him a suitable medication and returned Plaintiff to his cell.

Eventually, Plaintiff was given Oxcarbazepine, which Plaintiff took because he did not

realize what it was. The medication caused Plaintiff to feel tired and sleepy—at one point, he was sleeping 23 out of 24 hours per day. On October 15, 2013, Plaintiff met with Vu and told him he thought he was depressed from the Oxcarbazepine because he was sleeping so much. Vu did not change Plaintiff's medication, so Plaintiff refused to take the medication any longer. Plaintiff's symptoms improved thereafter.

At one of Plaintiff's medical appointments, one of the medical staff showed Plaintiff a document in his medical records. The document stated that Plaintiff had consented to participate in an experimental drug program involving Oxcarbazepine, even though Plaintiff had not so consented. At some point, Plaintiff asked Defendant Schneider to pull the document from his records, but Schneider refused to look for the document. She also informed Plaintiff that she had spoken to Vu and that Vu had told her that there was no such document. One week later, Schneider acquiesced and looked in Plaintiff's medical records for the document. No such document was found.

At some point in October or November 2013, Plaintiff was prescribed physical therapy by an unnamed doctor. Plaintiff alleges that Defendants Guerra and Salzman falsified a document stating that Plaintiff refused physical therapy on November 21, 2013, however, and Plaintiff did not receive the prescribed therapy. Plaintiff did not discover the document until January 3, 2014 and immediately requested physical therapy from Vu. Because his records stated that he had refused therapy before, his name was placed at the bottom of the physical therapy waiting list. Plaintiff had to wait many months for his therapy because of this delay and was in great pain. Plaintiff has now started physical therapy and the pain has resolved.

On January 21, 2014, Plaintiff was given an EKG by an unknown nurse. The week after that, he was given another EKG by Defendant Guerra, who told him that his "heart has not gotten worse." When Plaintiff checked his medical records, however, there was no record of the first EKG and the date on the second EKG had been changed. Plaintiff alleges that, as a result of this oversight, he is "being refused proper medical treatment" and his "heart pain is

getting worse and worse." *Id.* at 8.

Plaintiff alleges that several other records are also missing from his medical file, including the results of a blood test from June 28, 2012 and an x-ray from August 20, 2013. Plaintiff also alleges that Defendants have refused to provide him additional medical diagnostic tests, including chest x-rays, EKGs, stress tests, or lung tests. They also refuse to check his moles for malignancies. He asserts that they are not managing his pain correctly.

Plaintiff requests damages (compensatory and punitive), declaratory relief, injunctive relief, and costs of suit.

### III. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Id.*

#### A. Involuntary Medication – Due Process Claim

The decision to forcibly medicate an inmate implicates both substantive and procedural due process. *Washington v. Harper*, 494 U.S. 210, 222 (1990). Inmates have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *U.S. v. Loughner*, 672 F.3d 731, 744 (9th Cir. 2012), *quoting Washington*, 494 U.S. at 221-22. The liberty interest "must be 'defined in the context of an inmate's confinement.'" *Loughner*, 672 F.3d at 745, *quoting Washington*, 494 U.S. at 222. Prison officials have an obligation to provide prisoners with medical treatment and

have a duty to take reasonable measures to ensure an inmate's safety. *Washington*, 494 U.S. at 225.

There are three factors that are "particularly relevant in the context of involuntary medication: (1) 'there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it'; (2) 'a court must consider the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and (3) 'the absence of ready alternatives.'" *Id.* (internal punctuation and citations omitted). "Forced medication can only be justified by a determination by a neutral fact-finder that the antipsychotic drugs are medically appropriate and that the circumstances justify their application." *Hawes v. Breiner*, Case No. C 12-2024-WHA (PR), 2013 WL 6073389, at *2 (N.D. Cal. Nov. 18, 2013), *citing Kulas v. Valdez*, 159 F.3d 453, 455-56 (9th Cir. 1998).

In addition to the substantive requirements, involuntary medication "cannot withstand challenge if there are no procedural safeguards to ensure the prisoner's interests are taken into account." *Id.*, *quoting Washington*, 494 U.S. at 233. Due process is satisfied if the inmate is provided with "notice, the right to be present at an adversary hearing, and the right to be present and cross examine witnesses." *Washington*, 494 U.S. at 235.

Plaintiff has plausibly alleged a violation of his rights to both substantive and procedural due process. Plaintiff alleges that he told Defendant Vu he did not want to take any psychiatric medications. Vu then tricked him into taking Oxcarbazepine, a psychiatric medication, by telling Plaintiff that he was only taking a pain medication. Based on these allegations, Plaintiff has stated a claim for due process violations against Defendant Vu.

**B.    Conspiracy**

Plaintiff alleges that Defendant Schneider conspired with Vu to violate his constitutional rights. In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the

defendants." *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that "defendants conspired or acted jointly or in concert and that some overt act [was done] in furtherance of the conspiracy." *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974). As with all other section 1983 claims, a plaintiff must also allege facts that show that "defendants have deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States." *Id.*

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), *quoting United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006), *quoting Woodrum v. Woodward Cnty., Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 44, *quoting United Steel Workers*, 865 F.2d at 1541.

Plaintiff has not stated a claim for conspiracy. Plaintiff alleges that Schneider failed to look into Plaintiff's medical records after Vu told her that the document that Plaintiff was seeking was not in the records. One week later, however, she complied with Plaintiff's requests and looked in Plaintiff's records. It is not clear from Plaintiff's allegations what "overt act" Schneider committed to violate Plaintiff's constitutional rights—she did accede to his request to look into his medical records, even if she did it one week later than he would have liked. Nor is it evident that her failure to check Plaintiff's records advanced or furthered any violation of constitutional rights. It does not advance Plaintiff's due process claims because Schneider did not play any role in the involuntary administration of Oxcarbazepine to Plaintiff. And it does not advance any inadequate medical care claim under the Eighth Amendment

because such actions fall short of demonstrating "deliberate indifference."  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (erroneous transfer of medical records, which lead to confiscation of sling that prisoner was entitled to, while "inexcusable, did not amount to deliberate indifference").  Plaintiff fails to state a claim for conspiracy.

### C. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), *quoting Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).  The two-part test for deliberate indifference requires the plaintiff to show:  (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  *Jett*, 439 F.3d at 1096, *quoting McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference."  *Id.*, *citing McGuckin*, 974 F.2d at 1060.  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  *Id.*  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs.  *McGuckin* 974 F.2d at 1060, *citing Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.  *Id.* at 1060.  "[E]ven gross

negligence is insufficient to establish a constitutional violation." *Id.*, *citing Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chosen was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff alleges that he suffers from a variety of medical symptoms, including constant and debilitating pain. He also alleges that his medical providers falsify and otherwise tamper with his medical records, fail to adequately communicate with him, and refuse to schedule medical tests. Plaintiff alleges that he was prescribed physical therapy, but that Defendants Guerra and Salzman falsified a document saying he refused physical therapy, causing his therapy to be delayed by several months.

With respect to Plaintiff's medical records and Defendants' refusals to schedule medical tests, Plaintiff has not demonstrated that any of the Defendants acted with deliberate indifference. Plaintiff fails to allege facts showing that any of the Defendants knew about and consciously disregarded a substantial risk of serious harm to Plaintiff, causing him to suffer pain or injury. While a failure to maintain accurate medical records falls short of medical best practices, it does not demonstrate significant injury in and of itself. Defendant may believe that he requires additional medical tests and examinations, but a difference of opinion between he and his providers does not establish deliberate indifference. *Franklin*, 662 F.2d at 1344.

The delay in providing Plaintiff physical therapy is a closer question. There is some case law that suggests that a delay in providing physical therapy or even a failure to provide sufficiently aggressive physical therapy can, under some circumstances, constitute deliberate indifference to serious medical needs. *See, e.g., Morgan v. Halbesein*, Case No. CV 12-3594-

PA MAN, 2012 WL 5830003, at *11 (C.D. Cal. Nov. 16, 2012) ("Failure to provide physical therapy can be a basis for an Eighth Amendment claim."); *Jackson v. Rallos*, Case No. 2:09-cv-3234 KJN P, 2012 WL 1037937, at *31 (E.D. Cal. March 27, 2012) ("the failure to provide plaintiff with 'more aggressive' physical therapy . . . could support a claim of deliberate indifference"); *Lancaster v. Valdez*, Case No. CV 09-683-S-CWD, 2011 WL 2470680, at *5 (D. Idaho June 20, 2011) ("Though delays in medical treatment alone do not support a deliberate indifference claim, the undisputed facts support a reasonable inference that the failure to provide timely physical therapy, both before and after transfer to the ICC, could have resulted in further injury to plaintiff, unnecessary pain, and the necessity of an additional surgery to correct the injury"); *but see Mayer v. Redix*, Case No. EDCV 12-515-DMG OP, 2014 WL 4258704, at *10-11 (C.D. Cal. Aug. 26, 2014) ("Plaintiff cannot show that Defendants were deliberately indifferent to Plaintiff's need for physical therapy" based on delay that resulted because of "Plaintiff's changed medical condition").

It is unclear from Plaintiff's allegations how much of the delay in his treatment was the result of Defendants' actions as opposed to normal delays associated with assignment to a physical therapy waiting list. Plaintiff has alleged, however, that approximately two or three months passed before he noticed that he was not on the physical therapy waiting list, even though he had been prescribed physical therapy. He also alleges specific symptoms that have been alleviated by physical therapy including, for example, neck pain at the base of his skull, pain across his left shoulder, and pain between his shoulder blades. Plaintiff has thus plausibly alleged an Eighth Amendment claim based on the delay in providing him physical therapy against Defendants Guerra and Salzman.

**D.     Defendant Warden Kim Holland – Supervisory Liability**

Previously, Plaintiff alleged that Defendant Holland was liable for violations against him solely because she "is responsible for Plaintiff's well-being because she's the Warden." (Complaint at 8, ECF No.1.) Plaintiff was previously advised that "[l]iability under [§] 1983

arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). In the FAC, Plaintiff has removed any allegations about Holland's conduct. Plaintiff has not stated any claim against Holland.

### E. Declaratory and Injunctive Relief

In addition to monetary damages, Plaintiff requests injunctive and declaratory relief. Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

At this stage of the proceedings, Plaintiff's request for preliminary injunctive relief must also be denied. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1105 (9th Cir. 2010), *quoting Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24-25 (2008). Plaintiff cannot show that he is likely to suffer irreparable harm absent preliminary relief. As he notes in the FAC, he is already receiving the physical therapy he requests. Thus, a failure to order physical therapy at

this point would not cause him harm. Nor has he shown that a failure to administer any of the variety of tests that he requests will cause him any harm.

With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that defendants violated Plaintiff's rights is unnecessary.

## IV. LEAVE TO AMEND

With respect to the claims that the Court has found not cognizable, Plaintiff was previously granted leave to amend with ample guidance by the Court. Plaintiff has been unable to remedy the defects or state a claim even after receiving guidance from the Court—indeed, as noted above, he has actually removed allegations or references to some defendants in the FAC. There is thus little reason to believe that providing Plaintiff further opportunities to amend his complaint would serve any useful purpose. The Court finds that the deficiencies outlined above are not capable of being cured by amendment and further leave to amend should not be granted as to the claims that the Court has found not congizable. 28 U.S.C. § 1915(e)(2)(B)(ii); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (upholding dismissal of second amended complaint without leave to amend after plaintiff failed to make appropriate changes to amended complaints). Leave to amend, of course, is unnecessary for the claims that the Court has found cognizable and that the Plaintiff is now free to pursue in litigation.

///

## V.  CONCLUSION

The Court has found that the FAC states two § 1983 claims against Defendant Vu and a § 1983 claim against Defendants Guerra and Salzman.  However, as explained above, Plaintiff does not state any claims against Defendants Holland or Schneider.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's claims against Defendants Holland and Schneider be dismissed with prejudice;
2. Plaintiff's claims against Defendant Vu under 42 U.S.C. § 1983 based on violations of substantive and procedural due process be allowed to proceed; and,
3. Plaintiff's claims against Defendants Guerra and Salzman under 42 U.S.C. § 1983 based on a failure to provide medical treatment be allowed to proceed.

These findings and recommendations will be submitted to the United States District Judge assigned to this case pursuant to the provisions of Title 28 of the United States Code section 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **July 29, 2016**                          /s/ Erica P. Grosjean
                                                              UNITED STATES MAGISTRATE JUDGE